## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut corporation, <br><br> Plaintiff, <br><br> v. <br><br> DEERE & COMPANY, a Delaware corporation, <br><br> Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    C.A. No. |

## COMPLAINT FOR DECLARATORY RELIEF

Travelers Property Casualty Company of America ("Travelers") sues Deere & Company ("Deere") for declaratory relief and alleges as follows:

### Nature of Action

1.    This is an action for declaratory relief under 22 U.S.C. § 2201 *et. seq.* to establish there is no coverage under Travelers' insurance policy for the claims asserted against Deere in two underlying lawsuits pursuant to numerous policy provisions and exclusions.

### Parties, Jurisdiction, and Venue

2.    Travelers is a Connecticut corporation with its principal place of business in Connecticut.

3.      Deere is a Delaware corporation with its principal place of business in Illinois.

4.      Jurisdiction exists under 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of attorney's fees, interest, and costs.

5.      Venue is proper pursuant to 28. U.S.C. § 1391(b)(1) and (2), as Deere is a citizen of this district, a substantial part of the events giving rise to the claim occurred in this district, and the underlying actions are pending in this district.

6.      All conditions precedent have occurred, have been performed, or have been waived.

## XAPT Corporation's Underlying Action

7.      On April 3, 2020, XAPT Corporation sued Deere in the action styled *XAPT Corporation v. Deere & Company*, Case No. 2020-0252-JRS, in the Court of Chancery in the State of Delaware (the "*XAPT Corporation Suit*").

8.      On May 19, 2021, XAPT Corporation filed a second amended complaint (the "SAC"). A copy of the SAC is attached as Exhibit 1.

9.     XAPT Corporation alleges that Deere hired it to build a custom software platform to help manage Deere's business. (SAC ¶¶19-22.)

10.     More specifically, the SAC alleges Deere hired XAPT Corporation to modify its existing proprietary software program to tailor the program to Deere's particular needs. (*Id*.)

11.     On or about June 26, 2017, XAPT Corporation and Deere entered into a "Master Services Agreement" ("MSA"). (*Id*. ¶22.) By its terms, the MSA "appl[ied] to all [Statements of Work] entered into between" Deere and XAPT Corporation. (*Id*. ¶23.)

12.     Notably, the MSA is "governed by the laws of the state of Delaware without regard to its conflict of laws provisions. …" (Ex. 2 of SAC, MSA, at §15.4.) Deere and XAPT Corporation also agreed to "submit to the non-exclusive jurisdiction of the courts of [Delaware]." (*Id*.)

13.     According to XAPT Corporation, on or about October 18, 2019, Deere repudiated the parties' agreement and refused to continue to comply with its terms. (SAC ¶61.)

14.     Deere allegedly failed to return the partially completed software program that was the subject of XAPT Corporation's work. (*Id*. ¶72.)

Allegedly, Deere intends to finish the project and implement it without XAPT Corporation. (*Id*.)

15.     In the SAC, XAPT Corporation asserts claims for breach of contract for several violations, including Deere's failure to pay XAPT Corporation amounts it claims to be owed. (*Id*. ¶¶100-110.)

16.     XAPT Corporation also seeks an injunction to enjoin Deere from using the partially completed software program. (*Id*. ¶¶93-99.)

17.     Moreover, XAPT Corporation seeks a declaration that Deere forfeited all rights and benefits under the contract. (*Id*. "Wherefore" clause.)

## **XAPT Solutions and XAPT Kft's Underlying Action**

18.     On September 16, 2020, XAPT Solutions Pty Ltd. ("XAPT Solutions") and XAPT Kft sued Deere in the action styled *XAPT Solutions PTY LTD. and XAPT Kft v. Deere & Company*, Case No. 2020-0787-JRS, in the Court of Chancery in the State of Delaware (the "*XAPT Solutions Suit*").[1]

---

[1] Jointly, the *XAPT Corporation* Suit and the *XAPT Solutions* Suit are referred to as the "Underlying Actions."

19.     On May 6, 2021, XAPT Solutions and XAPT Kft filed an amended complaint. A copy of the amended complaint is attached as <u>Exhibit 2</u>.

20.     In their amended complaint, XAPT Solutions and XAPT Kft allege they were subcontractors that helped XAPT Corporation build the software program for Deere. (Am. Compl. ¶2.)

21.     XAPT Kft owns XAPT Corporation and XAPT Solutions and holds the ownership rights to the software program. (*Id*. ¶¶8, 12.)

22.     In connection with the project, employees of XAPT Solutions and XAPT Kft were allegedly required to sign nondisclosure agreements. (*Id*. ¶2.)

23.     XAPT Solutions' and XAPT Kft's employees allegedly signed the nondisclosure agreements and complied with all their obligations. (*Id*.)

24.     XAPT Solutions and XAPT Kft assert a claim against Deere seeking a declaratory judgment to establish, among other things, that they have fully complied with the nondisclosure agreements and have no obligations under the contract between Deere and XAPT Corporation. (*Id*. ¶¶51-56.)

25.     XAPT Solutions and XAPT Kft also seek an injunction to prevent Deere from using the partially completed software program. (*Id.* "Wherefore" clause.)

## The CyberFirst Policy

26.     Travelers issued a CyberFirst Liability Policy to XAPT Corporation, as the named insured, bearing policy number ZPL-41N15933-19-I5 and effective from August 2, 2019 to August 2, 2020 (the "CyberFirst Policy"). A certified copy of the CyberFirst Policy is attached as Exhibit 3.

27.     The CyberFirst Policy includes several liability coverages, including errors and omissions ("E&O") coverage, communications and media liability ("CAML") coverage, and network and information security liability ("NAISL") coverage.

28.     Form PR T1 00 01 17 of the CyberFirst Policy, titled CyberFirst General Provisions Form (the "General Provisions Form"), provides in relevant part:

> **THIS FORM APPLIES TO EACH OF THE CYBERFIRST COVERAGE FORMS THAT ARE PART OF YOUR POLICY.**
>
> *       *       *
>
> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the CyberFirst Declarations, and any

other person or organization qualifying as a Named Insured under this policy. The words "first Named Insured" refer to the Named Insured listed first in Item **1.** Of the Cyberfirst Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

*        *        *

## SECTION I – COVERAGE

**1.      Defense Of Claims Or Suits – Liability Coverages**

  **a.**  We will have the right and duty to defend the insured against any:

    **(1)**  "Claim" or "suit" seeking "damages"; or

    **(2)**  "Suit" seeking injunctive relief;

    For loss to which the insurance provided under one or more of "your CyberFirst liability coverage forms" applies, if no provider of other insurance has a duty to defend the insured against that "claim" or "suit". However, we will have no duty to defend the insured against any "claim" or "suit" seeking "damages", or "suit" seeking injunctive relief, for loss to which the insurance provided under "your CyberFirst liability coverage forms" does not apply.

*        *        *

**3.      Exclusions Applying To The Liability Coverages Provided Under Your CyberFirst Coverage Forms**

  The following exclusions apply to all of "your CyberFirst liability coverage forms" and are in addition to the exclusions contained in each such coverage form.

7

This insurance does not apply to:

**a.    Claims Or Suits By Certain Persons Or Organizations**

Loss for which a "claim" is made or "suit" is brought by or on behalf of any "controlled organization" or "controlling person or organization."

\*      \*      \*

## SECTION II – WHO IS AN INSURED

\*      \*      \*

**5.**    Any person or organization that is not otherwise an insured under this policy and that you have agreed in a written contract or agreement to include as an additional insured under this policy is an insured, but only with respect to liability for loss to which one or more of "your CyberFirst liability coverage forms" applies that:

**a.**    Is caused by a "wrongful act" committed after you have signed and executed that contract or agreement; and

**b.**    Is caused, in whole or in part, by acts or omissions of you, or any person or organization acting on your behalf, under that contract or agreement.

\*      \*      \*

## SECTION V – CYBER CONDITIONS

\*      \*      \*

**2.    Conditions Applying To The Liability Coverages Provided Under Your CyberFirst Coverage Forms**

The following conditions apply to all of "your CyberFirst liability coverage forms".

\*      \*      \*

**a.     Duties In The Event Of A Wrongful Act, Claim Or Suit**

\*      \*      \*

**(3)**     You and any other involved insured must:

**(a)**     Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

**(b)**     Authorize us to obtain records and other information;

**(c)**     Cooperate with us in the investigation, defense or settlement of the "claim" or "suit"; and

**(d)**     Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of loss to which the insurance provided under any of "your CyberFirst liability coverage forms" may also apply.

**(4)**     No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

\*      \*      \*

**SECTION VII – DEFINITIONS**

$$* \qquad * \qquad *$$

**4.**   "Damages":

    **a.**   Means a monetary amount paid to a claimant for loss.

$$* \qquad * \qquad *$$

**21.**   "Wrongful act" means any of the following:

    **a.**   "Errors and omissions wrongful act".

    **b.**   "Network and information security wrongful act".

    **c.**   "Communications and media wrongful act".

29.   Form PR T1 02 01 17, titled CyberFirst Technology Errors and Omissions Liability Coverage Form ("E&O Form"), provides in pertinent part:

### SECTION I – ERRORS AND OMISSIONS LIABILITY COVERAGE

**1.   Insuring Agreement**

$$* \qquad * \qquad *$$

    **a.**   We will pay those sums that the insured must pay as "damages" because of loss to which this insurance applies that exceed the applicable retention, only if:

        **(1)**   The loss arises out of "your product" provided to others or "your work" provided or performed for others;

        **(2)**   The loss is caused by an "errors and omissions wrongful act" committed anywhere in the world;

(3)    The "errors and omissions wrongful act" was committed on or after the Technology Errors And Omissions Retroactive Date shown in the CyberFirst Declarations and before the end of the policy period; and

(4)    A "claim" or "suit" that seeks "damages" because of the loss is first made or brought against any insured, in accordance with Paragraph **d.** below, during the policy period or any Extended Reporting Period we provide under Section **VI** – Extended Reporting Periods in your CyberFirst General Provisions Form.

\*     \*     \*

**2.**    **Exclusions**

The following exclusions apply to the coverage provided under this form. These exclusions apply in addition to the exclusions in Paragraphs 2. and 3. of Section I – Coverage in your CyberFirst General Provisions Form.

This insurance does not apply to:

\*     \*     \*

**b.**    **Claims Or Suits By Insureds Against Insureds**

Loss for which a "claim" is made or "suit" is brought by or on behalf of any current or former insured against any current or former insured.

This exclusion does not apply to any "claim" made or "suit" brought by any person or organization that:

(1)    Is an insured under Paragraph **5.** of Section **II** – Who Is An Insured in your CyberFirst General Provisions Form; or

          **(2)**     Has been added as an additional insured by attachment of an endorsement under this policy.

*    *    *

**g.**    **Intellectual Property**

Loss arising out of any actual or alleged infringement or violation of any of the following rights or laws:

**(1)**    Copyright;

**(2)**    Patent;

**(3)**    Trade dress;

**(4)**    Trade name;

**(5)**    Trade secret;

**(6)**    Trademark; or

**(7)**    Other intellectual property rights or laws.

*    *    *

**SECTION II – DEFINITIONS**

**1.**    "Errors and omissions wrongful act" means any error, omission or negligent act.

30.    Additionally, Form PR T1 01 01 17 of the CyberFirst Policy, titled CyberFirst Communications and Media Liability Coverage Form ("CAML Form"), provides in pertinent part:

**SECTION I – COMMUNICATIONS AND MEDIA LIABILITY COVERAGE**

1.      **Insuring Agreement**

\*      \*      \*

a.      We will pay those sums that the insured becomes legally obligated to pay as "damages" because of loss to which this insurance applies that exceed the applicable retention, only if:

**(1)**     The loss is caused by a "communications and media wrongful act" committed anywhere in the world;

**(2)**     The "communications and media wrongful act" was committed on or after the Communications And Media Retroactive Date shown in the CyberFirst Declarations and before the end of the policy period; and

**(3)**     A "claim" or "suit" that seeks "damages" because of the loss is first made or brought against any insured, in accordance with Paragraph d. below, during the policy period or any Extended Reporting Period we provide under Section VI – Extended Reporting Periods in your CyberFirst General Provisions Form.

\*      \*      \*

2.      **Exclusions**

The following exclusions apply to the coverage provided under this form. These exclusions apply in addition to the exclusions in Paragraphs 2. and 3. of Section I – Coverage in your CyberFirst General Provisions Form.

This insurance does not apply to:

\*      \*      \*

    c.    **Claims Or Suits By Insureds Against Insureds**

Loss for which a "claim" is made or "suit" is brought by or on behalf of any current or former insured against any current or former insured.

This exclusion does not apply to any "claim" made or "suit" brought by any person or organization that:

    **(1)**    Is an insured under Paragraph **5.** of Section **II** – Who Is An Insured in your CyberFirst General Provisions Form; or

    **(2)**    Has been added as an additional insured by attachment of an endorsement under this policy.

    d.    **Infringement of Copyrighted Software**

Loss arising out of any actual or alleged "infringement of copyrighted software".

\*    \*    \*

## SECTION II – DEFINITIONS

\*    \*    \*

**5.**    "Copyrighted" means protected by a copyright regardless of whether such copyright is registered with the United States Copyright Office.

\*    \*    \*

**7.**    "Infringement of copyrighted software" means:

    **a.**    Piracy of a "copyrighted" software product; or

    **b.**    Infringement of "copyrighted" software code or any other "copyrighted" element of any part of a software program.

31.    Moreover, Form PR T1 03 01 17 of the CyberFirst Policy, titled CyberFirst Network and Information Security Liability Coverage Form ("NAISL Form"), provides in relevant part:

**SECTION I – NETWORK AND INFORMATION SECURITY LIABILITY COVERAGE**

**1.    Insuring Agreement**

\*        \*        \*

**a.**    We will pay those sums that the insured becomes legally obligated to pay as "damages" because of loss to which this insurance applies that exceed the applicable retention, only if:

**(1)**    The loss is caused by a "network and information security wrongful act" committed anywhere in the world;

**(2)**    The "network and information security wrongful act" was committed on or after the Network And Information Security Retroactive Date shown in the CyberFirst Declarations and before the end of the policy period; and

**(3)**    A "claim" or "suit" that seeks "damages" because of the loss is first made or brought against any insured, in accordance with Paragraph d. below, during the policy period or any Extended Reporting Period we provide under Section VI – Extended Reporting Periods in your CyberFirst General Provisions Form.

\*        \*        \*

**2.    Exclusions**

The following exclusions apply to the coverage provided under this form. These exclusions apply in addition to the exclusions in Paragraphs 2. and 3. of Section I – Coverage in your CyberFirst General Provisions Form.

This insurance does not apply to:

*        *        *

**b.    Claims Or Suits By Insureds Against Insureds**

Loss for which a "claim" is made or "suit" is brought by or on behalf of any current or former insured against any current or former insured.

This exclusion does not apply to any "claim" made or "suit" brought by any person or organization that:

(1)    Is an insured under Paragraph 5. of Section II – Who Is An Insured in your CyberFirst General Provisions Form; or

(2)    Has been added as an additional insured by attachment of an endorsement under this policy.

*        *        *

**d.    Intellectual Property**

Loss arising out of any actual or alleged infringement or violation of any of the following rights or laws:

**(1)**    Copyright;

**(2)**    Patent;

**(3)**    Trade dress;

**(4)**    Trade name;

16

**(5)**    Trade secret;

**(6)**    Trademark; or

**(7)**    Other intellectual property rights or laws.

32.    Finally, the endorsement titled Additional Insured –
Controlling Persons or Organizations, Form PR T3 01 01 17, provides:

**SCHEDULE OF CONTROLLING PERSONS OR
ORGANIZATIONS**

XAPT, KFT

**PROVISIONS**

The following is added to SECTION II – WHO IS AN
INSURED:

Any person or organization shown in the Schedule of Controlling
Persons Or Organizations that is a "controlling person or
organization" is an insured, but only:

a.    With respect to liability that arises out of its
controlling ownership interest in you; and

b.    For loss to which the insurance provided under one
or more of "your CyberFirst liability coverage
forms" applies.

**<u>Travelers' Other Policies</u>**

33.    In addition to the CyberFirst Policy, Travelers also issued:

a.    a commercial general liability policy to XAPT

Corporation, as the named insured, bearing policy number ZLP-

15T02477-16-I5 and effective from August 2, 2016 to August 2, 2017;

       b.      a commercial excess liability policy to XAPT Corporation, as the named insured, bearing policy number ZUP-61M38621-16-I5 and effective from August 2, 2016 to August 2, 2017;

       c.      a commercial general liability policy to XAPT Corporation, as the named insured, bearing policy number ZLP-15T02477-17-I5 and effective from August 2, 2017 to August 2, 2018;

       d.      a commercial excess liability policy to XAPT Corporation, as the named insured, bearing policy number ZUP-61M38621-17-I5 and effective from August 2, 2017 to August 2, 2018;

       e.      a commercial general liability policy to XAPT Corporation, as the named insured, bearing policy number ZLP-15T02477-18-I5 and effective from August 2, 2018 to August 2, 2019;

f.      a commercial excess liability policy to XAPT

Corporation, as the named insured, bearing policy number CUP-

8K626762-18-I5 and effective from August 2, 2018 to August 2,

2019;

g.      a commercial general liability policy to XAPT

Corporation, as the named insured, bearing policy number ZLP-

15T02477-19-I5 and effective from August 2, 2019 to August 2,

2020; and

h.      a commercial excess liability policy to XAPT

Corporation, as the named insured, bearing policy number CUP-

8K626762-19-I5 and effective from August 2, 2019 to August 2,

2020.

(The policies referenced in this paragraph shall collectively be referred to as

the "Other Policies.")

34.    The Other Policies only apply to suits seeking damages because

of "bodily injury", "property damage", "personal injury", or "advertising

injury", as those terms are defined in the Other Policies.

## **Additional General Allegations**

35.     In a letter to Travelers dated December 8, 2021, Deere (through its counsel) characterized itself as an "additional named insured" under the CyberFirst Policy and contended the claims asserted against Deere in the Underlying Actions are covered.

36.     According to Deere's letter, the contract between XAPT Corporation and Deere required XAPT Corporation to make Deere an additional insured under the CyberFirst Policy.

37.     Before its counsel's letter of December 8, 2021, Deere had never asserted it was an insured in connection with its dealings with XAPT, had never alerted Travelers to the Underlying Actions, and had never requested coverage under the CyberFirst Policy.

38.     Moreover, Deere has never asked Travelers to consent to any cost or expense associated with the Underlying Actions.

39.     Neither the CyberFirst Policy nor the Other Policies provide coverage for the claims asserted against Deere in the Underlying Actions.

40.     There is a present and *bona fide* controversy between Travelers and Deere. Disputes exist between Travelers and Deere regarding coverage under the CyberFirst Policy and the Other Policies, and each such dispute is

ripe and justiciable. Travelers is in need of a judicial declaration to establish that it has no obligations to Deere under the CyberFirst Policy or any of the Other Policies.

### Count I – No Coverage Because Deere Does Not Qualify as an Insured With Respect to the Underlying Suits

41.    Travelers incorporates paragraphs 1 through 40.

42.    Section II – WHO IS AN INSURED of the General Provisions Form defines an insured, in relevant part, as any "organization that is not otherwise an insured under this policy and that you[2] have agreed in a written contract or agreement to include as an additional insured under this policy."

43.    The CyberFirst Policy limits the scope of the definition of "additional insureds" granted that status by written agreement by stating that such an organization is an insured "only with respect to liability for loss … that … [i]s caused by a 'wrongful act' … and [i]s caused, in whole or in part, by acts or omissions of [XAPT Corporation], or any person or organization acting on [XAPT Corporation's] behalf."

44.    The MSA provides:

---

[2] As noted above, the CyberFirst Policy defines "you" and "your" to mean "the Named Insured shown in the CyberFirst Declarations." The "Named Insured shown in the CyberFirst Declarations" is "XAPT Corporation." Therefore, the words "you" and "your" refer only to XAPT Corporation.

Deere and its Affiliates must be specifically included as additional insureds under the following coverages: commercial general liability, commercial automobile, and umbrella/excess liability, technology errors & omissions, privacy/network security (cyber) liability and media liability coverages for liability or loss arising out of or in any way associated with any act, error, omission, or product of Supplier, its directors, officers, shareholders, its workforce or anyone else for whose acts or products Supplier may be hold [sic] responsible (with coverage to Deere at least as broad as that which is provided to Supplier and not lessened or avoided by endorsement).

45.   The *XAPT Solutions* Suit merely seeks declarations of the parties' rights and obligations and a permanent injunction restraining Deere from "using or transferring" certain software. The *XAPT Solutions* Suit also seeks an order requiring Deere to "return or certify destruction of" that software. While the "Prayer for Relief" in the *XAPT Solutions* Suit Amended Complaint requests "such other and further relief as the Court deems just and proper," the Amended Complaint alleges no other injury to the claimants.

46.   The factual allegations included in the *XAPT Solutions* Suit and the remedies sought are not "loss" as that term is used in the CyberFirst Policy.

47.     In addition, the *XAPT Solutions* Suit does not allege "loss that [was] caused, in whole or in part, by acts or omissions of [XAPT Corporation] or any person or organization acting on" its behalf.

48.     The *XAPT Corporation* Suit does not allege facts or seek to impose liability on Deere Corporation for "loss caused by acts or omissions of [XAPT Corporation] or any person or organization acting on [XAPT Corporation's] behalf." Rather, to the extent that suit alleges that "loss" occurred, such loss was allegedly caused entirely by Deere.

49.     Accordingly, Deere does not fall within the scope of an "insured" under the CyberFirst Policy for the purposes of either of the Underlying Actions. Therefore, Travelers is not obligated under the CyberFirst Policy to defend or indemnify Deere for either of those suits. Similarly, Travelers does not owe Deere a fiduciary duty, a duty of good faith, or any other duty to provide an accounting for Travelers' defense of XAPT Corporation.

**Count II – No Coverage Due to Insured Versus Insured Exclusion**

50.     Travelers incorporates paragraphs 1 through 40.

51.     The liability coverage forms in the CyberFirst Policy are the only forms that obligate Travelers to defend or indemnify its policyholders

for "claims" or "suits". There are three coverage forms in the CyberFirst Policy that provide liability coverage—the E&O Form, the CAML Form, and the NAISL Form. All three forms exclude coverage for any suit brought by an insured against another insured.

52.     Specifically, each liability form includes a materially identical exclusion that states that "[t]his insurance does not apply to … [l]oss for which a 'claim' or 'suit' is made or brought by or on behalf of any current or former insured."

53.     The "Claims Or Suits By Insureds Against Insureds" exclusion is subject to exceptions. One exception is for claims or suits brought by "any person or organization that … [h]as been added as an additional insured by attachment of an endorsement under this policy."

54.     The second exception to the "Claims Or Suits By Insureds Against Insureds" exclusion is for claims or suits brought by "any person or organization that … [i]s an insured under Paragraph 5. of Section II – Who Is An Insured in your CyberFirst General Provisions Form[.]"

55.     XAPT Corporation is the named insured on the CyberFirst Policy.

56.     Neither of the exceptions apply to XAPT Corporation, and the exclusion negates any coverage that might otherwise be available to Deere for the *XAPT Corporation* Suit under the CyberFirst Policy.

57.     Accordingly, to the extent Deere is an insured under the CyberFirst Policy, there is no coverage for Deere for the claims asserted by XAPT Corporation. In other words, Travelers is obligated neither to defend nor indemnify Deere against the *XAPT Corporation* Suit under the CyberFirst Policy.

### **Count III – No Coverage Due to Failure to Comply with Conditions**

58.     Travelers incorporates paragraphs 1 through 40.

59.     The General Provisions Form requires Deere to, among other things, "[i]mmediately send [Travelers] copies of any demands, notices, summonses or legal papers received in connection with the 'claim' or 'suit'" and "cooperate with [Travelers] in the investigation, defense or settlement of the 'claim' or 'suit'."

60.     Prior to its letter of December 8, 2021, Deere never sent Travelers copies of any summonses or complaints in the Underlying Actions or any other legal paper.

61.    Similarly, Deere has retained counsel, and upon information and belief, paid fees and expenses without Travelers' consent. Deere has made these voluntary payments without any indication or communication from Deere that Deere contends it is entitled to a defense and/or indemnity for the Underlying Actions under the CyberFirst Policy.

62.    Deere never expressed its opinion that it is "covered" under the CyberFirst Policy for the Underlying Actions in any communication to Travelers prior to its December 8, 2021 letter.

63.    As a result, Travelers is not obligated under the CyberFirst Policy to defend or indemnify Deere for the Underlying Actions.

## Count IV – No Coverage for Voluntary Payments

64.    Travelers incorporates paragraphs 1 through 40.

65.    The General Provisions Form provides that "[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without [Travelers'] consent."

66.    As noted above in Paragraph 60, Deere has not asked Travelers to consent to any cost or expense relating to the underlying actions.

67.     To the extent Deere has paid or incurred costs or expenses in connection with the Underlying Actions, there is no coverage under the CyberFirst Policy for those voluntary payments.

## Count V – No Coverage Under the NAISL Form
## Because No Network and Information Security Wrongful Act

68.     Travelers incorporates paragraphs 1 through 40.

69.     The NAISL Form only responds to losses caused by a "network and information security wrongful act".

70.     The Underlying Actions do not allege that Deere committed a "network and information security wrongful act".

71.     Under the NAISL Form in the CyberFirst Policy, Travelers is not obligated to defend or indemnify Deere against the Underlying Actions.

## Count VI – No Coverage Under the CAML Form
## Because No Communications and Media Wrongful Act

72.     Travelers incorporates paragraphs 1 through 40.

73.     The CAML Form only responds to losses caused by a "communications and media wrongful act".

74.     The Underlying Actions do not allege that Deere committed a "communications and media wrongful act".

75.     Under the CAML Form in the CyberFirst Policy, Travelers is not obligated to defend or indemnify Deere against the Underlying Actions.

### Count VII – No Coverage For *XAPT Solutions* Suit Under the E&O Form Because No Errors and Omissions Wrongful Act

76.     Travelers incorporates paragraphs 1 through 40.

77.     The E&O Form only responds to losses caused by an "error and omissions wrongful act".

78.     The *XAPT Solutions* Suit does not allege that Deere committed an "error or omissions wrongful act".

79.     Under the E&O Form in the CyberFirst Policy, Travelers is not obligated to defend or indemnify Deere against the *XAPT Solutions* Suit.

### Count VIII – No Coverage for Suit Brought After Policy Period

80.     Travelers incorporates paragraphs 1 through 40.

81.     The E&O Form, CAML Form, and NAISL Form only provide coverage for a claim or suit brought during the policy period or any extended reporting period.

82.     The policy period for the CyberFirst Policy ended on August 2, 2020.

83.     The *XAPT Solutions* Suit was brought on September 16, 2020.

84.     To the extent it was not brought during the policy period or any applicable extended reporting period, there is no coverage under the CyberFirst Policy for the *XAPT Solutions* Suit.

**Count IX – No Coverage Due to**
**Infringement of Copyrighted Software Exclusion**

85.     Travelers incorporates paragraphs 1 through 40.

86.     The CAML Form excludes coverage for any "[l]oss arising out of any actual or alleged 'infringement of copyrighted software'."

87.     The Underlying Actions allege Deere has wrongfully retained and intends to use proprietary and protected software.

88.     To the extent the Underlying Actions allege loss arising from any infringement of copyrighted software, there is no coverage for that loss under the CyberFirst Policy.

**Count X – No Coverage Due to Intellectual Property Exclusion**

89.     Travelers incorporates paragraphs 1 through 40.

90.     The E&O Form and NAISL Form exclude coverage for any loss arising out of any "actual or alleged infringement or violation of any of the following rights or laws: … [c]opyright … or [o]ther intellectual property rights or laws," among other things.

91.     The Underlying Actions allege Deere has wrongfully retained and intends to use proprietary and protected software.

92.     To the extent the Underlying Actions allege loss arising from any infringement of copyright or other intellectual property rights or laws, there is no coverage for that loss under the CyberFirst Policy.

## Count XI – No Coverage Due to Controlling Organization Exclusion

93.     Travelers incorporates paragraphs 1 through 40.

94.     The General Provisions Form excludes coverage for any suit brought by any "controlling person or organization."

95.     A "controlling person or organization" is defined as "any person or organization that owns the controlling ownership interest in you."

96.     XAPT Kft owns XAPT Corporation.

97.     Accordingly, there is no coverage under the CyberFirst Policy for Deere for the claims XAPT Kft brought against Deere.

## Count XII – No Coverage Under the Other Policies

98.     Travelers incorporates paragraphs 1 through 40.

99.     The Other Policies only apply to suits seeking damages because of "bodily injury", "property damage", "personal injury", or "advertising injury", as those terms are defined in the Other Policies.

100.   The Underlying Actions do not allege damages for "bodily injury", "property damage", "personal injury", or "advertising injury".

101.   As a result, Travelers has no obligation under the Other Policies to defend or indemnify Deere against the Underlying Actions.

## **Requested Relief**

**WHEREFORE**, Travelers respectfully requests this Court:

a.      Take jurisdiction and adjudicate the rights of the parties under the Policy;

b.      Declare that Travelers has no obligation to defend or indemnify Deere in the Underlying Actions;

c.      Award Travelers all costs it incurs in connection with this action; and

d.      Grant all such other relief as the Court deems just and proper under the circumstances.

ROBINSON & COLE LLP

Curtis J. Crowther (No. 3238)
1201 N. Market Street, Suite 1406
Wilmington, DE 19801
Telephone:  (302) 516-1700
Facsimile:  (302) 516-1699
Email:  ccrowther@rc.com

*Attorneys for Travelers Property Casualty*
*Company of America*

Dated:  January 6, 2022